IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| v. | : Criminal Action No. 07-100-GMS |
| JASON WESTLEY, | : |
| Defendant. | : |

**DEFENDANT'S MOTION TO SUPPRESS
PHYSICAL EVIDENCE AND STATEMENTS**

Defendant, Jason Westley, by and through his undersigned counsel, Luis A. Ortiz, Assistant Federal Public Defender for the District of Delaware, hereby moves this Court, pursuant to Federal Rule of Criminal Procedure 12(b)(3) and the Fourth and Fifth Amendments of the United States Constitution, for an Order suppressing the Government's use of any and all evidence obtained as a result of Mr. Westley's unlawful arrest on or about February 18, 2007, including all statements made during, or subsequent to, the unlawful arrest.

In support of this motion, Mr. Westley submits as follows:[1]

1. On May13, 2007, at approximately 7:13 a.m., Officer Christopher Bumgarner, of the Dover Police Department, responded to 110 Shadow Court because of an assault report. Upon arrival, Officer Bumgarner spoke to Gregory Frederick, the alleged victim. Mr. Frederick alleged that an individual, whom he knew as "J West/ John West/ J Dubs" and believed to be 21 years old,

---

[1] The facts contained in paragraphs 1-8 of this motion were taken from the Discovery. Mr. Westley cites these facts in his motion, but he does not concede that the events transpired as stated by the arresting officers. Mr. Westley submits that an evidentiary hearing is needed to further develop the facts, which are determinative of this motion.

assaulted him with his fists and a walking stick. Mr. Frederick told Officer Bumgarner that his attacker possessed a handgun and cocaine.

2. Officer Bumgarner also interviewed James Brittons who allegedly witnessed the assault. Mr. Brittons confirmed that there had been an assault and gave Officer Bumgarner a broken walking stick. Mr. Brittons stated that he knew the attacker by the name of "John West or John Webb," and that he was 26 years old. Mr. Brittons described the suspect as a black man wearing a grey sweatshirt and black pants, with short puffy hair and some facial hair, and further alleged that he had sold John West or John Webb a 9mm Ruger for $200.00. Officer Bumgarner searched 110 Shadow Court for the alleged attacker, but did not find the suspect.

3. At approximately 2:08 p.m., Officer Bumgarner and several Dover police officers responded back to 110 Shadow Court after receiving a call from Mr. Frederick asking to drop the charges. Police dispatchers allegedly heard voices in the background during the phone call, and Officer Bumgarner believed that Mr. Brittons was possibly being coerced by the suspect.

4. When the officers arrived at the scene, they observed an individual, who was later identified as Mr. Westley, blowing leaves with a leaf blower outside of the residence. Upon information and belief, the officers immediately approached Mr. Westley with their weapons drawn and grabbed his hands.

5. As Mr. Westley was being restrained, he allegedly indicated that he had a firearm on him, and that it belonged to Mr. Brittons. Officer Martineck, who was at the scene, retrieved an unloaded Phoenix handgun from Mr. Westley's rear pant pocket.

6. Officer Bumgarner subsequently spoke to Mr. Frederick at his residence. Mr. Frederick again stated that he no longer wanted to press charges, and that the suspect had left a gray book bag

and jacket at the house that he wanted removed. Officer Bumgarner showed the items to Mr. Westley, who allegedly asked that the items be taken to the Dover Police Department. The items were later inventoried as Mr. Westley's property.

7. Officer Bumgarner searched Mr. Westley at the police station, and found a loaded pistol magazine in his front pants pocket. Officer Bumgarner also recovered a prescription pill bottle containing marijuana from Mr. Westley's pants pocket, and recovered a clear plastic bag containing 3.9 grams of cocaine powder from his groin area. Officer Bumgarner also searched Mr. Westley's alleged backpack and recovered a glass pipe, more marijuana and a digital scale.

8. Law enforcement officials alleged that they provided Mr. Westley with his Miranda warnings, and he allegedly agreed to talk to Officer Bumgarner. Mr. Westley initially stated that he was under the influence of drugs or alcohol, and went on to talk about a long list of topics. Mr. Westley allegedly stated that he was only on medication that helped "normalize him," and proceeded to make a series of incriminating statements.

9. On July 12 2007, Mr. Westley was indicted for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), possession of marijuana, in violation of 21 U.S.C. § 844, and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1).

10. The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." See U.S. CONST. Amend. IV. In Terry v. Ohio, 392 U.S. 1, 19 (1968), the Supreme Court stated that "seizures" under the Fourth Amendment occur when law enforcement officials have "by means of physical force or show

of authority . . . in some way restrained the liberty of a citizen." See also Payton v. New York, 445 U.S. 573 (1980) (stating that the warrantless arrest of a person is a "species of seizure required by the (Fourth) Amendment to be reasonable").

11. A police officer must have probable cause to make an arrest. Robinson v. Clemons, 987 F.Supp. 280 (D.Del. 1998), citing Terry, 392 U.S. at 20; Dunaway v. New York, 442 U.S. 200 (1979) (stating that lengthy detentions beyond investigatory stops must be "based on consent or probable cause") quoting United States v. Brignoni-Ponce, 422 U.S. 873, 881-82 (1975) ("Probable cause" means there are facts "sufficient to warrant a belief that the [suspect] has committed or is committing a crime . . . .").

12. Here, the police officers lacked probable cause to arrest Mr. Westley. Moreover, the officers did not have a search warrant or arrest warrant prior to arriving at 110 Shadow Court, and and arrested Mr. Westley without observing any inappropriate behavior or confirming his identity.

13. Upon information and belief, Mr. Westley had previously been a houseguest at 110 Shadow Court the night before his arrest, and was simply doing yard work when officers arrested him. There were no exigent circumstances present to overcome the presumption of unreasonableness. At best, the police officers speculated that the individual standing in front of 110 Shadow Court may have been involved in an assault that occurred much earlier in the day. This suspicion alone, however, does not support Mr. Westley's arrest. Because Mr. Westley's arrest violated the Fourth Amendment, all evidence, including the firearm that was seized after Mr. Westley was arrested, must be suppressed in accordance with the "fruit of the poisonous tree doctrine" expressed in Wong Sun v. United States, 371 U.S. 471 (1963).

14. Mr. Westley further submits that any alleged statements made during, or subsequent to,

his unlawful arrest should be suppressed pursuant to the Fifth Amendment and <u>Miranda v. Washington</u>, 384 U.S. 436, 444 (1966) (stating that a suspect subjected to custodial interrogation must be advised of his rights prior to making a statement).

15. Here, Mr. Westley contends that he did not knowingly, intelligently and voluntarily waive his <u>Miranda</u> rights. At the time of his statements, Mr. Westley was clearly intoxicated, and incoherent, and he is mentally ill. "A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually, and reliably determined." <u>Jackson v. Denno</u>, 378 U.S. 368, 380 (1964). Once the defendant challenges the admissibility of an alleged statement, the Government bears the burden of establishing compliance with <u>Miranda</u> and its progeny, and must demonstrate that the suspect knowingly, intelligently and voluntarily waived his or her rights. <u>Id.</u> at 444.

16. Mr. Westley reserves the right to file a Memorandum of Law in support of his Motion to Suppress Physical Evidence and Statements after the completion of an evidentiary hearing in this matter.

**WHEREFORE,** Mr. Westley respectfully submits that this Court conduct an evidentiary hearing to further develop the facts related to this motion and enter an Order suppressing the Government's use of any and all evidence obtained as a result of Mr. Westley's unlawful arrest on or about May 13, 2007, including all statements made during, or subsequent to, the unlawful arrest.

        Respectfully submitted,

        /s/ Luis A. Ortiz
        Luis A. Ortiz
        Federal Public Defender

        Attorney for Jason Westley

Federal Defender's Office
District of Delaware
704 King Street, Suite 110
Wilmington, DE  19801
(302) 573-6010

Dated: September 14, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 07-100-GMS |
| | : | |
| JASON WESTLEY, | : | |
| | : | |
| Defendant. | : | |

## **ORDER**

**AND NOW**, this \_\_\_\_ day of _____, 2007, upon consideration of the Defendant's Motion to Suppress Physical Evidence and Statements, and the Government's response thereto, it is hereby ORDERED that the Motion is GRANTED.

All physical evidence seized by law enforcement officials on _____,\_\_\_ 2007, and statements made by Defendant to law enforcement officials on _____ \_\_\_, 2007, are hereby **SUPPRESSED**. Such physical evidence and statements shall be inadmissible, for any purpose, by the Government.

**BY THE COURT:**

_____
Honorable Gregory M. Sleet
United States District Court Chief Judge